UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDDIE C. MULLEN,<br>*Plaintiff*, | : : : : : : : : | Civil Case Number<br><br>3:15-CV-00023 (VLB)<br><br>December 7, 2017 |
| v. | | |
| WATERBURY BOARD OF<br>EDUCATION, RON FROST;<br>*Defendants.* | | |

## MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. 36]

Plaintiff Eddie Mullen ("Plaintiff" or "Mullen") brings this employment discrimination action against the Waterbury Board of Education and Ron Frost (collectively, "Defendants") under 42 U.S.C. § 1983, alleging discrimination based on race and color. Before the Court is Defendants' Motion for Summary Judgment wherein Defendants argue poor performance and misconduct as reasons for deciding not to rehire Plaintiff as a substitute teacher. [Dkt. 36]. Upon the Court's issuance of the Order to Show Cause, [Dkt. 37], Plaintiff has submitted a Response but did not include a D. Conn. Civ. L. R. 56(a)(2) Statement. *See* [Dkt. 38]. The Court thereafter held a telephonic conference where it instructed Defendants to submit additional evidence and Plaintiff to submit a Rule 56(a)(2) Statement. See [Dkt. 42 (Order on Tel. Conf.)]. Subsequently Defendants complied but Plaintiff did not. For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment.

## Background

The foregoing facts are taken from Defendants' D. Conn. Civ. L. R. 56(a)(1) Statement and other evidence submitted on the record. Because Plaintiff has not submitted a D. Conn. Civ. L. R. 56(a)(2) Statement, the facts supported by admissible evidence are deemed admitted. Fed. R. Civ. P. 56(e).

Plaintiff is an African American male who was previously employed as a substitute teacher by the City of Waterbury in 1989. [Dkt. 36-2 (D. Conn. Civ. L. R. 56(a)(1) Stmt) ¶ 2]. He filed with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and Equal Employment Opportunity Commission ("EEOC") an employment discrimination claim against the City of Waterbury and Board of Education in 1993. [Dkt. 20 (Second Am. Compl. and Exs.) at 20 of PDF (indicating case number 9330379)]. He worked again for the City of Waterbury as a substitute teacher from 1995 through 2001. [Dkt. 36-2 ¶ 2]. During this time in 1997, Plaintiff withdrew his employment discrimination claim with the EEOC. [Dkt. 20 at 21 of PDF (accepting his withdrawal of Charge No. 16A931268 on March 24, 1997)].

Plaintiff then worked as a Substitute Teacher in the Stratford school system from April 2003 until March 2005. *Id.* at 17 of PDF. Plaintiff has submitted annual letters from the Connecticut State Department of Education, Bureau of Human Resources, indicating that he "can accept this letter as a reasonable assurance that [his] name will remain on the list of

approved Substitute Instructors for the upcoming school year" at WF Kaynor RVTS and WF Kaynor THS[1]; these letters were sent in late May and early June of years 2005 through 2008.  *Id.* at 13-16 of PDF.

Plaintiff applied for a substitute teaching position on November 15, 2011.  [Dkt. 36-4 (Mot. Summ. J. Ex. 2, Foster Aff. and Exs.) at 7 of PDF]. At the time, Defendant Ron Frost was the Director of Personnel for the Waterbury Board of Education, which had standard procedures for processing teaching applications for people who had previously worked as substitute teachers in the school system.  *See* [Dkt. 44 (Supp. D. Conn. Civ. L. R. 56(a)(1) Stmt) ¶¶ 1-3].  Under these procedures, the Director of Personnel was to contact principals at the applicant's former schools and, in circumstances in which the applicant was reported to have poor performance or unbecoming conduct, it was standard procedure not to rehire the individual.  *See id.* ¶¶ 3-4.  Defendant Frost followed these procedures for Plaintiff's application and contacted Matt Larkin and Mike LaRusso,[2] two principals who formerly worked at a Waterbury public school called the North End Middle School.  *See id.* ¶¶ 5-6.  Mr. Larkin reported Plaintiff came to work intoxicated, and Mr. LaRusso reported Plaintiff was found sleeping in a classroom and a stairwell.  *Id.* ¶ 7.

---

[1] Specifically, the letters dated June 2, 2005 and June 8, 2006 pertain to "WF Kaynor RVTS."  *Id.* at 13-14 of PDF.  The letters dated June 6, 2007 and May 27, 2008 pertain to "WF Kaynor THS."  *Id.* at 15-16 of PDF.

[2] The Court notes that Defendant Frost's affidavit references Mike "LoRusso."  The Court will refer to him as Mr. "LaRusso" as all other documents in evidence utilize this spelling.

3

Defendant Frost elected not to rehire Plaintiff based on these reports. *Id.* ¶ 8.

On April 2, 2012, Plaintiff filed an employment discrimination action against "City of Waterbury and Board of Education" ("CHRO Respondents") before the CHRO. [Dkt. 36-4 at 5 of PDF (indicating CHRO Case No. 1230352 and EEOC/HUD Case No. 16A201200960)]. He alleged discrimination based on race, color, and his previous opposition, filing, testimony or assistance. *Id.*

On June 12, 2012, CHRO Respondents submitted a Response to a Request for Additional Information, stating in relevant part that there existed no written policy, but the procedure for hiring a substitute teacher included the following: "Applicant fills out application and submits to a criminal background check, drug screening and verification of qualifications. The application is vetted for any problems or concerns. If acceptable, the applicant's name is placed on a substitute teacher list." [Dkt. 36-4 at 13 of PDF]. CHRO Respondents also indicated that Plaintiff deemed not eligible "based on his poor performance issues and unbecoming conduct during his previous employment" and that "[h]is application was vetted when he previously applied in 2009. There was no reason to vet it again." *Id.* at 15 of PDF.

Plaintiff submitted a letter in reply on June 30, 2012. *Id.* at 19 of PDF. He challenged the Waterbury Board of Education's application procedure, stating, "I was turned away before I was able to submit these documents,"

4

i.e. the criminal background check, drug screening, and verification of qualification. *Id.* He argued that he submitted these documents in October 2009, wherein the drug test came back negative. He also argued,

> The Board of Education Response was base[d] on poor performance issues and unbecoming conduct during previous employment. I can assu[r]e you that there is no perfect human being on earth. I have been a professional through out [sic] my carrel [sic] before and after any incident of Feb 5, 2002. If [sic] the arrogance of a man I once idolize[d], mottle larking, and another man whom I never met before Feb 26, 2002.

*Id.* He also stated, "In this Feb 26, 2002 meeting between my self [sic] and the higher ups, I believe collaboration took place between union president and the administration. I was not represented at any time even though I mentioned a medical problem I was having prior to the meeting." *Id.* at 20 of PDF.[3]

The CHRO initiated a Draft Finding of No Reasonable Cause on May 15, 2014.[4] *Id.* at 25 of PDF. Thereafter, the CHRO issued its Final Determination on June 13, 2014, dismissing the case on the merits for No Reasonable Cause. *Id.* at 37 of PDF. The determination informed Plaintiff

---

[3] On January 23, 2014, Plaintiff filed a Withdrawal of Complaint for CHRO No. 1230353 and EEOC No. 16A201200961 against "Waterbury PAL," indicating the reason for his withdrawal is: "I have accepted a satisfactory offer from the respondent. The offer included the following: Confidential." [Dkt. 20 at 19 of PDF]. The case numbers are one digit off from the CHRO and EEOC case numbers discussed at length in this fact section. It appears that Plaintiff may have filed two sequential cases before the administrative agencies and withdrew the second in 2014.

[4] The CHRO's findings are based on evidence not submitted to this Court and cannot be used for the truth of the matter asserted. *See* Fed. R. Evid. 801(c). The Court therefore does not include or refer to the findings in this decision.

that he could request reconsideration by the CHRO or appeal the disposition to the Superior Court of the State of Connecticut. *Id.* at 38 of PDF. Plaintiff thereafter received a Notice of Right to Sue letter from the EEOC on November 26, 2014. [Dkt. 1 (Compl. and Exs.) at 7 of PDF]. Plaintiff filed this case in January 2015. He denies being intoxicated at work and claims instead he had a seizure and was for diabetes and high blood. [Dkt. 20 at 4 of PDF].

<u>Legal Standard</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine factual disputes exist. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). This means that "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000); *see Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-00481, 2004 WL 2472280, at *4 (D. Conn. Oct. 20, 2004) ("At the summary judgment

stage of the proceeding, [the moving party is] required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient.") (citing *Gottlieb*, 84 F.3d at 518); *Martinez v. Conn. State Library*, 817 F. Supp. 2d 28, 37 (D. Conn. 2011). Put another way, "[i]f there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

A party who opposes summary judgment "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726–27 (2d Cir. 2010).

## Analysis

Plaintiff alleges that Defendants discriminated against him on the basis of race and color in violation of 42 U.S.C. § 1983. Defendants argue they had a legitimate basis for denying his application as a substitute

7

teacher and that Plaintiff did not exhaust his administrative remedies with respect to Defendant Frost.

I. <u>The Merits of Section 1983 Claims</u>

Section 1983 of Title 42 of the United States Code provides a cause of action against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subject, or caused to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." To bring a claim pursuant to 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a federal right and the alleged deprivation "was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *Feingold v. New York*, 366 F.3d 138, 159 (2d. Cir 2004) (same). Section 1983 is not itself the source of substantive rights, but rather is a method for federal rights conferred by other statutes. *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004). Section 1983 protects individuals from employment discrimination through the rights provided under 42 U.S.C. § 1981, *see id.*, which establishes that all people "have the same right . . . to make and enforce contracts," 42 U.S.C. § 1981.

An employment discrimination case filed under 42 U.S.C. § 1983 utilizes the same burden-shifting framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). *See Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013); *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123

(2d Cir. 2004); *Ziering v. New York City Dep't of Health, Office of Med. Exam'r*, 621 F. Supp. 679, 680 (S.D.N.Y. 1985) ("The Supreme Court in *McDonnell Douglas Corp* . . . set forth the criteria for determining whether a prima facie case of racial discrimination under Title VII has been proved. Under the circumstances of this case, these criteria may be used to determine whether the plaintiff has satisfied his burden under Sections 1981 and 1983.") (internal citations omitted).

Under this framework the plaintiff must first "establish a prima facie case of discrimination." *Garcia*, 706 F.3d at 127 (citing *Raytheon v. Hernandez*, 540 U.S. 44, 50 n.3 (2003)). "The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action." *Id.* If this burden is met, "the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual." *Id.* Plaintiff's evidence must "reasonably support[] a finding of prohibited discrimination." *Id.*

    A. *Prima Facie Case*

To establish a prima facie case of employment discrimination, a plaintiff must show: "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (Title VII); *Howard v.*

*City of New York*, 602 F. App'x 545, 546 (2d Cir. 2015) (citing *Holcomb* for proposition that plaintiff bears burden to demonstrate prima facie case for a § 1983 claim) (summary order); *Burbank v. Office of Attorney Gen. of Connecticut*, 240 F. Supp. 2d 167, 173 (D. Conn. 2003) (applying a substantially similar standard in a § 1983 claim for racial discrimination).

Defendants do not challenge Plaintiff's satisfaction of the first step under *McDonnell Douglas*. Accordingly, the Court presumes without deciding that Plaintiff's prima facie case has been satisfied and will proceed to the second element of the burden-shifting framework.

### B. *Legitimate, Non-Discriminatory Purpose*

Assuming, *arguendo*, Plaintiff has established his prima facie case, the Court finds Defendants have sufficiently established a legitimate, non-discriminatory reason for electing not to rehire Plaintiff. Defendants contend they did not hire Plaintiff as a substitute teacher because of his poor performance and conduct. Mr. LaRusso reported Plaintiff had been found sleeping in a classroom and in a stairwell. *See* [Dkt. 44 ¶ 7]. Mr. Larkin reported Plaintiff came to school intoxicated. *Id.*

Previous poor performance is a legitimate, nondiscriminatory reason for deciding not to hire an applicant. *See Burbank,* 240 F. Supp. 3d at 173 (finding in a § 1983 case plaintiff's general poor performance, i.e. "previous failures of the bar exam, previous work history, lack of recommendations," to be a legitimate, non-discriminatory reason for failing to hire); *Sengillo v. Valeo Elec. Sys., Inc.,* 538 F. Supp. 2d 585, 588 (W.D.N.Y. 2008), *aff'd*, 328 F.

App'x 39 (2d Cir. 2009) (finding in a retaliation case that "even if plaintiff were to establish his prima facie case, he cannot rebut [defendant's] legitimate, nondiscriminatory reason for failing to rehire him—poor performance in his previous [ ] position, for which he had been terminated"); *see also Almonord v. Kingsbrook Jewish Med. Ctr.*, No. 04-CV-4071 (NGG) (RML), 2007 WL 2324961, at *10 (E.D.N.Y. Aug. 10, 2007) ("Defendants proffer a legitimate reason (Plaintiff's poor performance) for Plaintiff's termination, which Plaintiff has not shown to be pretextual."); *Figueroa v. Weisenfreund*, 255 F. App'x 595, 597 (2d Cir. 2007) ("Further, even if Figueroa had established a prima facie case of retaliation, Appellees produced virtually uncontroverted evidence of numerous complaints about Figueroa's work performance, thus persuasively establishing that he would have been fired even in the absence of any protected speech."). The Court finds his previous poor performance to be a sufficient basis for electing not to rehire him. While Plaintiff claims in his Amended Complaint that he suffered from a seizure, high blood pressure, and diabetes, there is no evidence that he submitted this information in his application or otherwise notified Defendants that his prior issues of poor performance and possible intoxication were now controlled. Indeed, it had been reported to Defendant Frost that Plaintiff presented as someone who was not alert and perhaps under the influence of alcohol, and the employer had no basis to conclude that prior issues were resolved and would not reoccur. *See generally, Sengillo v. Valeo Elec. Sys., Inc.*, 328 F. App'x at 41-42 (finding an

employer's decision not to rehire an employee who was terminated for poor performance is a legitimate, non-discriminatory reason for electing not to rehire the individual). The Court finds that such a basis for not rehiring Plaintiff is a legitimate, non-discriminatory reason.

### C. *Pretext*

Once a defendant provides a legitimate, non-discriminatory reason for the employment action, a plaintiff must offer evidence of pretext that "reasonably supports a finding of prohibited discrimination." *Garcia*, 706 F.3d at 127. This means Plaintiff must provide evidence that the prohibited reason was at least a "motivating factor" and that the legitimate, non-discriminatory reason was not the only reason for the adverse employment decision. *Back*, 365 F.3d at 123.

Plaintiff submitted several newspaper articles ranging from 1993 to 2017 reporting on the Waterbury school system's need to diversify its professional staff, which he avers is a "two decade old problem[ ] of hiring, firing and promotion of African American teachers. . . ." [Dkt. 20 at 3 of PDF]. For example, one article from 1993 indicates "[r]ecruiting minority teachers and administrators topped a preliminary list of priorities" for leaders of the New Vision for Waterbury project. *Id.* at 8 of PDF. Another article from 2015 reported on Waterbury's relative lack of racial minorities as professional educators in comparison to Hartford and New Haven and a push from the City to increase the minority educator presence in Waterbury schools. *See id.* at 9 of PDF. Notably, one article from April 2016 reported

on Waterbury's change in the hiring process.  *See* [Dkt. 38 at 6 of PDF].  It stated,

> In the past, principals picked which teaching candidates to interview, and which one was submitted to human resources for hire.  Under the new system, the human resources department will pick candidates and, in cooperation with an instructional leadership director, sign off on final candidates before they are approved for hire by the school superintendent.  Principals will be part of the interview panels.

*Id.*  The goal of the policy change, according to Mayor Neil M. O'Leary, is to "make sure if we do get qualified minority applicants, those applicants get a fair and reasonable opportunity for employment."  *Id.*  A recent article from May 2017 documented a yearlong CHRO investigation into Waterbury's hiring process, which was reported to have "discriminatory recruitment and hiring practices."  *Id.* at 8 of PDF.  The draft report findings "suggest the CHRO likely will not issue a finding of systemic discrimination across the Waterbury Public Schools."  *Id.*  The Court takes judicial notice that the Republican-American newspaper reported the final report was consistent with the draft report.  *See* Editorial, *CHRO decision: Exoneration for Waterbury*, Republican-American (May 22, 2017), available at http://www.rep-am.com/opinion/editorials/2017/05/22/chro-decision/.

While these newspaper articles document the Waterbury Board of Education's longstanding need and efforts to diversify its education staff, it is not sufficient to rebut Defendants' legitimate, non-discriminatory reason for its employment action in this particular case.  To defeat summary judgment at the pretext stage, a plaintiff "must adduce enough evidence of

13

discrimination so that a rational fact finder can conclude that the adverse job action was more probably than not caused by discrimination." *Back*, 365 F.3d at 123. There simply is no evidence in the record that demonstrates Defendant Frost was aware of Plaintiff's race when making the employment decision, let alone that it was a "motivating factor." Without the presence of any evidence in the record pertaining to Plaintiff's race, a rational fact finder would not reasonably be able to conclude race discrimination is a factor in Defendant Frost's decision not to hire Plaintiff, and accordingly Plaintiff's claim fails. Because Plaintiff fails to establish the deprivation of a federal right, the Court need not address whether each Defendant is considered a "person acting under the color of state law."

II. <u>Failure to Exhaust Remedies: Defendant Frost</u>

The question of whether Plaintiff was required to exhaust his remedies before the EEOC regarding Defendant Frost is moot. Nonetheless, the Court notes that a plaintiff is not required to exhaust administrative remedies with the EEOC prior to bringing an employment discrimination claim under § 1983. *See Gresham v. Chambers*, 501 F.2d 687, 690-91 (2d Cir. 1974) (finding a plaintiff need not exhaust EEOC remedies for a race discrimination claim brought under 42 U.S.C. §§ 1981 and 1983 as Title VII does not cover the entire subject matter of the substantive protections under § 1981); *see also Martinez-Rivera v. Commonwealth of Puerto Rico*, 812 F.3d 69, (1st Cir. 2016) (holding that a § 1983 political discrimination claim does not require exhaustion of remedies

prior to bringing suit). Were the Court to have decided Plaintiff had a valid § 1983 claim against Defendant Frost, his failure to exhaust would not have prevented his claim against Defendant Frost.

## Conclusion

For the aforementioned reasons, Defendants' Motion for Summary Judgment is GRANTED as to both Defendants. The Clerk is directed to close this case.

IT IS SO ORDERED.

_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut.